**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

WILLIAM WYNNE,                              :
ADMINISTRATOR OF THE ESTATE    :
OF ANDREW LENETIS                      :
      Plaintiff,                              :        CIVIL CASE NO.
                              :        3:20-CV-001834 (JCH)
v.                                                    :
                              :
TOWN OF EAST HARTFORD,          :
ET AL.,                                           :
      Defendants.                           :        NOVEMBER 23, 2021

**RULING ON MOTIONS TO STRIKE OR SEVER THE APPORTIONMENT**
**COMPLAINT (DOC. NOS. 46, 47, 58)**

## I.  INTRODUCTION

Plaintiff William Wynne ("Wynne"), Administrator of the Estate of decedent Andrew Lenetis ("Lenetis"), brings this action under Title II of the Americans with Disabilities Act, the Rehabilitation Act of 1973, section 1983 of title 42 of the United States Code, and Connecticut state law against defendants the Town of East Hartford, Officer Kevin Beeman ("Beeman"), and Officer Kwanza Clayton ("Clayton").  The defendants have filed an Apportionment Complaint (Doc. No. 25) seeking to allocate liability to apportionment defendants emergency medical technician ("EMT") Philip Zetterstrom ("Zetterstrom"); EMT Rebecca Vest ("Vest"); Ambulance Service of Manchester, LLC ("the Ambulance Service"); and Saint Francis Hospital and Medical Center ("Saint Francis") (collectively, "The Apportionment Defendants").

Before the court are three Motions to Strike or Sever the Apportionment Complaint: one filed by the plaintiff, Pl.'s Mot. (Doc. No. 46); one filed by Zetterstrom, Vest, and the Ambulance Service (collectively, "the Ambulance Defendants"),

Ambulance Defs.' Mot (Doc. No. 47); and one filed by Saint Francis, Saint Francis' Mot. (Doc. No. 58). For the reasons elaborated below, the court denies all three Motions.

## II.  BACKGROUND

### A.  Operative Complaint (Doc. No. 1)[1]

The underlying Complaint alleges negligence and civil rights violations on the part of defendants Beeman, Clayton, and East Hartford based on violent and excessively forceful seizure allegedly inflicted upon decedent Andrew Lenetis, a mentally disabled man.

Lenetis suffered from schizophrenia and lived in a supportive housing residence serving people with mental health disabilities ("the Residence").  He had thrived in the Residence for around ten years, regularly receiving mental health services.  Lenetis had no history of any altercations with anyone at the Residence.  On November 1, 2019, around 1:30 pm, Lenetis used a pocket knife to cut into one or two small pumpkins on display outside the residence for Halloween.  He walked away for a few minutes and, when he returned to the Residence, he pushed over two chairs in the common room. He then had a normal conversation with a staff member and returned to his apartment without incident.  Another staff member, concerned that Lenetis required emergency medical assistance, called 911, described his behavior with the pumpkin and chairs, and requested a welfare check with the expectation that Lenetis would be brought to a hospital for evaluation and medication.

---

[1] The facts in this section are drawn from the original Complaint.  See Compl.  Because, at the motion to dismiss stage, the court must accept all factual allegations in the Complaint as true, "we describe the facts as alleged in the complaint, drawing all reasonable inferences in the plaintiff's favor, and construing any ambiguities in the light most favorable to upholding the plaintiff's claim." Sung Cho v. City of New York, 910 F.3d 639, 642 n.1 (2d Cir. 2018) (internal quotation marks and citations omitted).

In response to the staff member's call, the East Hartford Police Department dispatched defendants Beeman and Clayton to the Residence.  Both officers knew that the Residence was a supportive housing complex for people with disabilities and were aware that Lenetis was a person with a disability.

When the officers arrived at the Residence, a staff member told them that Lenetis was schizophrenic and was not taking his medication.  The staff member led Beeman and Clayton up to Lenetis' apartment so that they could check on Lenetis' welfare and, if needed, take him to the hospital for a metal health evaluation.  The officers knocked on Lenetis' door and ordered him out of his apartment.  When Lenetis complied, the defendants, without explanation, immediately grabbed his arms, restrained him, and violently slammed him to the floor head first.  Because the officers restrained his arms, Lenetis could not protect himself from the impact.  The blow caused three subdural hematomas to Andrew's brain and an injury to the interior of his left eye, among other serious injuries.  The officers handcuffed him and led him out to an ambulance, where they removed his handcuffs.

Lenetis was taken in the ambulance to Saint Francis Hospital in Hartford.  On the way, he lost consciousness, and after he was assessed by the emergency department, he underwent emergency neurosurgery to relieve pressure on his brain to try to save his life.  The surgery, however, was unsuccessful, and Lenetis died on November 3, 2019.  An autopsy performed by the State of Connecticut Office of the Chief Medical Examiner on or about November 4, 2019, determined that Lenetis suffered fatal injuries when his head struck the floor and that the cause of his death was subdural hematoma due to the

blunt impact injury.  The Chief Medical Examiner deemed Lenetis' death a homicide committed by the defendant officers.

Wynne, the administrator of Lenetis' Estate, filed an eight-count complaint against Beeman, Clayton, and the Town of East Hartford.  In Counts One, Two, and Six, Wynne brought federal claims against East Hartford under the Americans with Disabilities Act, 42 U.S.C. §§ 12101 et seq., the Rehabilitation Act of 1973, 29 U.S.C. § 701 et seq., and section 1983 of title 42 of the U.S. Code.  The Fifth Count alleges violations of the Connecticut Constitution against all defendants.  The remaining Counts sound in negligence under Connecticut law.  Counts Three and Four, which Wynne brings under section 52-555 of the Connecticut General Statutes, allege that Beeman, Clayton, and the Town of East Hartford acted negligently to cause Lenetis' wrongful death.  Count Seven alleges negligence against East Hartford under section 52-557n of the Connecticut General Statutes.  Finally, in Count Eight, Wynne seeks indemnification against East Hartford under section 7-465 of the Connecticut General Statutes.

B.    Apportionment Complaint (Doc. No. 25)[2]

The defendants—Beeman, Clayton, and the Town of East Hartford—filed an Apportionment Complaint seeking to apportion liability to the Ambulance Defendants and Saint Francis as to Counts Three, Four, Seven, and Eight of the original Complaint.

---

[2] The facts in this section are drawn from the Apportionment Complaint, see Apportionment Compl., treating the factual allegations as true and construing the claims in the defendants' (apportionment plaintiffs') favor. See Sung Cho, 910 F.3d at 642 n. 1; see also Ames Assocs. v. ABS Partners Real Est. LLC, No. 06 CIV. 928 (TPG), 2010 WL 890034, at *2 (S.D.N.Y. Mar. 3, 2010) ("the court must accept the factual allegations contained in the third-party complaint as true and draw all reasonable inferences in the third-party plaintiffs favor.").

The three-count Apportionment Complaint alleges medical malpractice against each of the Apportionment Defendants.

                1.      Count One: Zetterstrom and Vest

The defendants bring the first Count of the Apportionment Complaint against Zetterstrom and Vest for medical malpractice. In Count One, the defendants allege that Zetterstrom and Vest were dispatched to the Residence in response to a police emergency examination request.  When Zetterstrom and Vest arrived at the Residence, defendants Beeman and Clayton turned Lenetis over to the EMTs, advising them that Lenetis had exhibited aggressive behavior earlier in the day.

Zetterstrom took Lenetis' vital signs en route to the hospital, finding Lenetis' heartrate elevated and his Glasgow Coma Scale and verbal scores abnormal. Zetterstrom and Vest observed that Lenetis was disheveled and had a hematoma over his left eye.  Lenetis was also noted to have bilateral lower extremity swelling and mottling, a swollen scrotum, and symptoms of jaundice.  On the way to the hospital, Lenetis lost consciousness.  Despite the signs of Lenetis' medical distress, the only care that he received from Zetterstrom or Vest was the taking of his vital signs, and neither of them conducted a neurological check.  They took Lenetis to Saint Francis's psychiatric unit without first having him medically cleared by the hospital's emergency department. He was admitted to the psychiatric unit at approximately 2:59 pm.

Around 4:19 pm, hospital staff noticed Lenetis was unresponsive.  He was transferred to the emergency room, intubated, and admitted to emergency surgery starting around 6:56 pm.  The surgery was unsuccessful and, on November 3, 2019, Lenetis died.

The defendants allege that Lenetis' death was caused by the failure of Zetterstrom and Vest to exercise the degree of care and skill ordinarily utilized by EMTs under the circumstances by (1) failing to monitor and assess Lenetis' condition; (2) failing to check Lenetis' pupils or otherwise assess his neurological condition; (3) failing to have Lenetis cleared by the emergency department before taking him to the psychiatry wing; and (4) failing to exercise the care, skill, and diligence ordinarily exercised by EMTs under similar circumstances.

2.      Count Two: Ambulance Service

The defendants bring Count Two of the Apportionment Complaint against Ambulance Service of Manchester for medical malpractice.  Count Two alleges that Lenetis' death, injuries, and damages were caused by the Ambulance Service's failure, through its agents, servants, and employees, to exercise the degree of care and skill ordinarily and customarily utilized by ambulance and emergency service providers.  In addition to the failures alleged against Zetterstrom and Vest, the defendants add that the Ambulance Service failed to properly train, supervise, and monitor its employees and agents regarding the proper treatment of a patient in Lenetis' condition.

3.      Count Three: Saint Francis Hospital and Medical Center

 In Count Three of the Apportionment Complaint, the defendants allege that Saint Francis and its agents, servants, and employees committed medical malpractice.  Saint Francis and its agents, the defendants allege, caused Lenetis' death, injuries, and damages by failing to exercise the degree of care and skill ordinarily utilized by hospitals by: (1) failing to triage Lenetis in the psychiatric unit or send him to the emergency department for further evaluation; (2) failing to promptly diagnose Lenetis'

6

condition when he was admitted to the psychiatric unit; (3) failing to properly train, supervise, and monitor its employees and agents regarding the proper treatment of a patient in Lenetis' condition; and (4) failing to exercise the degree of care, skill, and diligence ordinarily exercised by hospital staff, personnel, and physicians under similar circumstances.

### 4.      Opinion Letters

Attached to the Apportionment Complaint are two letters from medical providers opining that the Apportionment Defendants breached the relevant standards of care. The author of the first opinion letter is a paramedic with 43 years of fire, rescue, and EMS experience.  See Apportionment Compl. at Ex. B.  The second opinion letter is written by a "physician licensed to practice medicine in the State of California" who is "engaged in the practice of Emergency Medicine at the University of California, San Diego Medical Center" and works "full time as a practicing clinician in the Emergency Department . . . ." See Apportionment Compl. at Ex. C.

## III.   LEGAL STANDARD

### A.      Rule 12(b)(6)

To withstand a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id.  Reviewing a motion to dismiss under Rule 12(b)(6), the court liberally construes the claims, accepts the factual

allegations in a complaint as true, and draws all reasonable inferences in the non-movant's favor.  See La Liberte v. Reid, 966 F.3d 79, 85 (2d Cir. 2020).  However, the court does not credit legal conclusions or "[t]hreadbare recitals of the elements of a cause of action." Iqbal, 556 U.S. at 678.

      B.     Rule 12(b)(2)

Under Rule 12(b)(2), "[a] civil action should be dismissed if the Court lacks personal jurisdiction over a party." Bull Bag, LLC v. Remorques Savage, Inc., No. 3:16-CV-1735 (VLB), 2017 WL 3763836, at *2 (D. Conn. Aug. 30, 2017).  The plaintiff bears the burden to prove that the court has jurisdiction over the defendants.  See id.  In deciding a motion to dismiss under 12(b)(2), the court has "considerable procedural leeway" to decide the motion on pleadings and affidavits, to permit discovery, or to hold an evidentiary hearing.  Perez v. Conn. Dep't of Corr. Parole Div., No. 3:13-CV-150 JCH, 2013 WL 4760955, at *2 (D. Conn. Sept. 4, 2013).  If the court chooses to rely on the pleadings and affidavits, the plaintiff can survive a motion to dismiss by making in good faith "legally sufficient allegations of jurisdiction" to establish a prima facie showing of jurisdiction.  Bull Bag, 2017 WL 3763836, at *2; see also O'Reilly v. BJ's Wholesale Club, Inc., No. 3:16-CV-01351, 2017 WL 3032217, at *2 (D. Conn. July 17, 2017). In such cases, "[a]ll allegations are construed in the light most favorable to the plaintiff and doubts are resolved in the plaintiff's favor." O'Reilly, 2017 WL 3032217, at *2.

      C.     Rule 42

Under Federal Rule of Civil Procedure 42(b), a district court has broad discretion to try issues and claims separately in order to "further convenience, avoid prejudice, or promote efficiency." Amato v. City of Saratoga Springs, 170 F.3d 311, 316 (2d

Cir.1999).  In particular, "bifurcation may be appropriate where, for example, the litigation of the first issue might eliminate the need to litigate the second issue . . . or where one party will be prejudiced by evidence presented against another party[.]" Id. (citations omitted).  See also Vichare v. AMBAC, Inc., 106 F.3d 457, 466 (2d Cir.1996) (holding bifurcation to be "appropriate where the evidence offered on two different issues will be wholly distinct . . . or where litigation of one issue may obviate the need to try another issue.").

Because "the general practice is to try all the issues in a case at one time", Miller v. Am. Bonding Co., 257 U.S. 304, 307 (1921), bifurcation is the exception and "not the rule." Svege v. Mercedes–Benz Credit Corp., 329 F.Supp.2d 283, 284 (D. Conn.2004); see also U.S. v. 43.47 Acres of Land, 45 F.Supp.2d 187, 190 (D. Conn.1999) ("Bifurcation . . . is a procedural device to be employed only in exceptional circumstances.") (citing Marisol A. v. Giuliani, 929 F.Supp. 662, 693 (S.D.N.Y.1996) aff'd sub nom. Marisol A. v. Giuliani, 126 F.3d 372 (2d Cir. 1997)); Rosa v. Town of East Hartford, No. 3:00CV1367 (AHN), 2005 WL 752206, at *4 (D. Conn. Mar. 31, 2005) ("Even though bifurcation is not unusual, it nonetheless remains the exception rather than the rule."); Dallas v. Goldberg, 143 F.Supp.2d 312, 315 (S.D.N.Y.2001) (collecting cases) (same). "[W]here there is a significant overlap in the evidence pertaining to the claims to be separated, bifurcation will not serve judicial economy." ABB Indus. Systems, Inc. v. Prime Technology, Inc., 32 F.Supp.2d 38, 43 (D. Conn. 1998) (citing Katsaros v. Cody, 744 F.2d 270, 278 (2d Cir. 1984)).

Rule 42(b) "simply does not give rise to a bright-line test." Guidi v. Inter–Continental Hotels Corp., No. 95 Civ. 9006(LAP), 2003 WL 1846864, at *1 (S.D.N.Y.

April 8, 2003) (quoting <u>Monaghan v. SZS 33 Assocs., L.P.</u>, 827 F.Supp. 233, 245 (S.D.N.Y.1993)).  Rather, bifurcation is within the district court's discretion and decided on a case-by-case basis.  <u>Idzojtic v. Pennsylvania R.R. Co.</u>, 456 F.2d 1228, 1230 (3d Cir. 1972).

"In establishing that bifurcation is warranted, the burden falls squarely on the party seeking bifurcation." <u>Guidi</u>, 2003 WL 1846864, at *1 (citing <u>Dallas</u>, 143 F.Supp.2d at 315).  "[T]he movant must justify bifurcation on the basis of the substantial benefits that it can be expected to produce." <u>Svege</u>, 329 F.Supp.2d at 284.

## IV.   DISCUSSION

### A.   <u>Apportionment Complaint and Applicable Standard for Motions to Strike</u>

Before turning to the merits of the parties' Motions, the court addresses a procedural issue regarding the disposition of state law apportionment complaints in federal court.  "Connecticut law allows certain defendants to file a type of third-party complaint, called an 'apportionment complaint,' for the purpose of apportioning the liabilities of joint tortfeasors when not all of the tortfeasors are party to the original action." <u>Abbate v. Northland AEG, LLC</u>, 788 F. Supp. 2d 50, 52 (D. Conn. 2011).

Under Connecticut's comparative negligence statute, section 52-572h of the Connecticut General Statutes, a defendant may file an apportionment complaint to implead non-parties and allocate damages among multiple tortfeasors. As the Connecticut Supreme Court has explained, this framework for apportioning liability arose from a series of tort reforms enacted by the Connecticut Legislature to replace the outdated model of joint and several liability:

> "Prior to October 1, 1986, this state followed the rules of joint and several liability with no contribution among joint tortfeasors. . . . Under the common

10

law of joint and several liability . . . even a defendant whose degree of fault was comparatively small could be held responsible for the entire amount of damages . . . . Thus, the plaintiff could collect the entire amount of his judgment from the richest defendant, or from the defendant with the deepest pocket . . . . In response largely to these concerns, the legislature undertook to reform the tort recovery provisions of our civil system . . . ."

Viera v. Cohen, 283 Conn. 412, 421–24 (2007). The legislature twice remodeled

Connecticut tort law, enacting "Tort Reforms I and II", and ultimately replaced the

common-law rule of joint and several liability with a system of apportioned liability. Tort

Reform II is now largely codified at section 52-572h of the Connecticut General

Statutes. In its overhaul, the legislature:

> "limited the persons to whom percentages of negligence could be attributed; required the jury or court to specify any findings of fact necessary for the court to articulate recoverable economic damages and recoverable noneconomic damages; and revised the method of reallocating an uncollectible amount of damages so that all recoverable economic damages would be reallocated among the other defendants and would compensate the claimant fully for such recoverable economic damages."

Id. Thus, under Connecticut's modern system of apportioning liability, a defendant can

share liability for an action by filing an apportionment complaint naming apportionment

defendants "who [are] or may be liable pursuant to . . . section [52-572h] for a

proportionate share of the plaintiff's damages[.]" Conn. Gen. Stats. § 52-102b.

Although no exact analogue for an apportionment complaint exists in the federal

courts, "judges in this District have permitted apportionment claims to be brought as

third-party claims under Rule 14." Guigliano v. Danbury Hosp., 396 F. Supp. 2d 220,

223 (D. Conn. 2005); see also Montanez, 2003 WL 22389355, at *5–6; DeGrenier v.

Joly, No. 3:01CV1012 (CFD), 2002 WL 31106386, at *1 (D. Conn. Aug. 9, 2002); Kim v.

Convent of the Sacred Heart, Inc., No. 3:95CV961 (AHN), 1998 WL 241213, at *3 (D.

Conn. April 17, 1998).  Here, therefore, the court will consider the Apportionment

Complaint as a third-party claim under Rule 14.

However, procedural differences between motions to strike in Connecticut state

practice and federal practice complicate the movants' challenges to the Apportionment

Complaint in this case.  Wynne, Saint Francis, and the Ambulance Defendants have

moved to strike the Apportionment Complaint for legal insufficiency pursuant to Federal

Rules of Civil Procedure 14(a)(4) and 12(f).  Such a motion would be proper under

Connecticut's Rules of Civil Procedure, wherein a motion to strike moves the court to

assess the legal sufficiency of a complaint's allegations.  See Conn. R. Super. Ct. Civ.

P. § 10-39.  However, under the Federal Rules of Civil Procedure, which apply in this

court, a motion to strike permits the court to "strike from a pleading an insufficient

defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ.

P. 12(f).  Here, the parties do not argue that the defendants' Apportionment Complaint

presents insufficient defenses or redundant, immaterial, impertinent, or scandalous

matters.[3]  Thus, the parties' motions are improperly presented as motions to strike

under the Federal Rules of Civil Procedure.  See, e.g., Stenta v. Live Nation Worldwide,

Inc., No. 3:10-CV-1071 WWE, 2011 WL 3290206, at *1 (D. Conn. Aug. 1, 2011)

(concluding that a motion to strike was improper where the movant did not argue that

---

[3] The plaintiff cites a number of cases for the proposition that a court may strike a pleading that is insufficient as a matter of law. See Pl.'s Mot. at 7-8. Each of these cases, however, discusses affirmative defenses that are insufficient as a matter of law. See, e.g., May Dept. Stores v. First Hartford Corp., 435 F.Supp. 849, 855 (D.Conn. Aug. 8, 1977); Nationstar Mortg. LLC v. Dadi, No. 3:17-CV-165 (MPS), 2018 WL 4054878, at *3 (D.Conn. Aug. 24, 2018). No affirmative defenses are at issue in the defendants' Apportionment Complaint.

the complaint contained an insufficient defense or other matter addressed in Federal Rule of Civil Procedure 14(a)(4)).

Nonetheless, in briefing, each party debates whether the Apportionment Complaint is sufficient as a matter of law,[4] effectively treating the Motions to Strike as motions to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).  See Iqbal, 556 U.S. 662, 678 ("a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'").  Because the parties have argued the Motions under the standard applicable to motions to dismiss, the court will consider the arguments put forth in each Motion to Strike under the Rule 12(b)(6) motion to dismiss standard.

> B.    Ambulance Defendants' Motion to Strike First and Second Counts of the Apportionment Complaint (Doc. No. 47)

The Ambulance Defendants move to strike the First and Second Counts of the Apportionment Complaint, arguing the Counts are legally insufficient as a matter of law.  See Ambulance Defs.' Mot. at 4.  In the Apportionment Complaint's First and Second Counts, the defendants seek to allocate a proportionate share of the Lenetis' damages to the Ambulance Defendants, alleging that Zetterstrom, Vest, and the Ambulance Service have committed medical malpractice.  Under Connecticut law, an individual

---

[4] See Pl.'s Mot. at 2 ("defendants' apportionment complaint is legally insufficient . . . .") and 7-8 (arguing that an apportionment complaint "must contain sufficient factual matter . . . to state a claim to relief that is plausible on its face."); Apportionment Defs.' Opp'n to Pl.'s Mot. at 1 ("the defendants object on the basis that the Apportionment Complaint states legally cognizable claims . . . ."); Saint Francis' Mot. at 1 (arguing the apportionment complaint is "insufficient as a matter of law" and 8 (arguing that an apportionment complaint "must contain sufficient factual matter . . . to state a claim to relief that is plausible on its face."); Apportionment Defs.' Opp'n to Saint Francis' Mot. at 1 ("the defendants object on the basis that the Apportionment Complaint states legally cognizable claims . . . ."); Ambulance Defs.' Mot. at 5 (arguing that a court may strike a pleading that is insufficient as a matter of law); Apportionment Defs.' Opp'n to Ambulance Defs' Mot. at 1 ("the defendants object on the basis that the Apportionment Complaint states legally cognizable claims . . . .").

alleging medical malpractice must prove "(1) the requisite standard of care for treatment, (2) a deviation from that standard of care, and (3) a causal connection between the deviation and the claimed injury. . . ."  Gold v. Greenwich Hospital Assn., 262 Conn. 248, 254–55 (2002).

The Ambulance Defendants do not argue that the defendants have failed to establish the requisite standard of care or a deviation from that standard of care. Rather, they contend that the Apportionment Complaint fails to allege facts sufficient to support an allegation that the Apportionment Defendants caused Lenetis' injuries and death.  Specifically, the Ambulance Defendants assert that (1) the original tortfeasor doctrine bars the defendants from seeking to apportion liability for medical malpractice, and (2) the Apportionment Complaint fails to adequately allege causation.

       1.     Original Tortfeasor Doctrine

The Ambulance Defendants contend that medical professionals who provide negligent care are not proper parties to an apportionment complaint.  As discussed previously, see pp. 10-11, supra, Connecticut tort law generally permits defendants to implead other alleged tortfeasors by filing an apportionment complaint, allowing the jury to distribute damages among potentially liable parties.  Connecticut's appellate courts have not directly considered whether an initial tortfeasor can file an apportionment complaint impleading third-party medical care providers for subsequent negligent treatment.  The Superior Courts, however, have addressed the issue, determining that "[i]t is . . . plausible that in an . . . accident followed by medical malpractice, a plaintiff may sustain a single indivisible item of damage proximately caused by both tortfeasors. If such an indivisible injury proximately caused by two different tortfeasors is found to

exist, the jury may apportion the damages . . . ." Berlepsch v. Peck, No. 423137, 2000 WL 157542, at *2 (Conn. Super. Ct. Jan. 25, 2000); see also Duby v. Tunxis Mgmt. Co., No. CV020821772S, 2004 WL 1462620, at *4 (Conn. Super. Ct. June 9, 2004) (suggesting that "injuries and losses allegedly caused by medical malpractice in treating the plaintiff's original injuries" may be apportioned between the initial tortfeasor and the medical provider); Carlson v. Waterbury Hosp., No. CV950321321S, 2008 WL 283259, at *1–2 (Conn. Super. Ct. Jan. 17, 2008) (holding that a jury could find that two doctors, who allegedly separately negligently treated or misdiagnosed a patient, were each a legal cause of the patient's death).

Despite the myriad lower court decisions affirming apportionment between initial tortfeasors and subsequent negligent medical care providers, the Ambulance Defendants invoke a tangentially related Connecticut Supreme Court case, Levesque v. Bristol Hosp. Inc., 286 Conn. 234, 248-49 (2008), to argue that the defendants' Apportionment Complaint is improper.  However, the Ambulance Defendants' reliance on Levesque is misplaced for two reasons.  First, the case does not involve an apportionment complaint. Second, to the extent that the case relates to the sharing of liability between potential tortfeasors, it validates the apportionment of damages between parties, including medical care providers.

In Levesque, the Supreme Court considered whether a tortfeasor may be liable for subsequent medical negligence, although no apportionment complaint had been filed.  The case concerned the liability of the defendant—an obstetrician-gynecologist— and a non-party—a neonatal resuscitation team—for negligent medical treatment of a newborn.  See Levesque, 286 Conn. at 242-43.  At trial, the jury found that the

obstetrician negligently delivered the baby and the resuscitation team then negligently intubated him, resulting in serious injuries.  Id. at 241.  However, the jury also found that the obstetrician did not proximately cause the newborn's injuries, and thus was not liable.  Id. at 241.  On appeal, the plaintiff claimed that the trial court's jury instructions failed to convey the relevant theory of negligence permitting one individual to be held liable for the subsequent negligence of another.  Id. at 247.  Ultimately, Connecticut's Supreme Court held that "a tortfeasor may be held liable for the subsequent negligence of a third party if that subsequent negligence was a [reasonably] foreseeable consequence of the tortfeasor's negligence." Id. at 248.  This holding reflected the "original tortfeasor doctrine": an injured party can recover from the original tortfeasor for damages caused by the negligence of a doctor in treating an injury that the tortfeasor caused. See, e.g., Restatement, 2 Torts § 457; annot. 100 A.L.R. 2d 808, 811; Anderson & McPadden, Inc. vs. Tunnucci, 167 Conn 584, 596 (1975).

Critically, though, the Court clarified that a jury is not "required to find" an initial tortfeasor liable for another's subsequent medical negligence just because the initial tortfeasor's negligence made the medical care necessary.  Id. at 249 (emphasis in original).  Rather, the jury must decide, "as a matter of fact, whether the [initial tortfeasor]'s negligence was a proximate cause of the injuries [the plaintiff] suffered as a result of the [subsequent tortfeasor]'s negligence." Id. at 250.  As the Connecticut Supreme Court explains, "[t]he principle that each of two successive tortfeasors can share liability, provided that they both are determined to be a proximate cause of the injury, is embodied in our statutory scheme of proportional liability." Id. at 246 n. 13 (citing General Statutes § 52–572h(c)).  Thus, contrary to the Ambulance Defendants'

portrayal of the case, <u>Levesque</u> supports the idea that an initial tortfeasor may seek to apportion liability to a subsequent negligent medical care provider who proximately caused the harmed party's injury, even if the subsequent negligence was reasonably foreseeable. Ultimately, it is the province of the jury to decide whether and how an initial tortfeasor and a medical care provider should proportionately share liability.

Accordingly, the original tortfeasor doctrine does not preclude the defendants' apportionment claims.  The court denies the Ambulance Defendants' Motion to Strike on the ground of the original tortfeasor doctrine.

> 2.    Causation

The Ambulance Defendants also contend that the Apportionment Complaint does not adequately allege that they caused Lenetis' injuries or death.  <u>See</u> Ambulance Defs.' Mot. at 7-10.  Specifically, they challenge the medical opinion letters submitted in support of the Apportionment Complaint.

Under Connecticut law, "[a]ll medical malpractice claims . . . require that a defendant physician's conduct proximately cause" the alleged injuries.  <u>Procaccini v. Lawrence & Mem'l Hosp., Inc.</u>, 175 Conn. App. 692, 718 (2017).  "The question is whether the conduct of the defendant was a substantial factor in causing the . . . injury." <u>Id.</u>  Whether a defendant's conduct was a substantial factor "is essentially a factual issue" properly reserved for the trier of fact.  <u>Levesque</u>, 286 Conn. at 249.  "It becomes a conclusion of law only when the mind of a fair and reasonable [person] could reach only one conclusion; if there is room for a reasonable disagreement the question is one to be determined by the trier as a matter of fact." <u>Id.</u>

In addition, section 52-190a of the Connecticut General Statutes establishes the requirement that an apportionment complaint alleging medical malpractice must be accompanied by a "a written and signed opinion of a similar health care provider . . . that there appears to be evidence of medical negligence" which includes "a detailed basis for the formation of such opinion." Conn. Gen. Stats. § 52-190a.  Here, the defendants have provided two opinions in support of their Apportionment Complaint. See Apportionment Compl. at Exs. B, C.  The Ambulance Defendants argue that the letters are inadequate because the medical experts offer no opinion regarding the cause of Lenetis' injury.

Medical opinions that do not meet the requirements of section 52-190a will not undermine the Apportionment Complaint, however, because as the Second Circuit made clear in a recent decision, "§ 52-190a is a procedural rule" inapplicable in federal court.  Corley v. United States, 11 F.4th 79, 82 (2d Cir. 2021); see also MacIntyre v. Moore, 335 F. Supp. 3d 402, 413 (W.D.N.Y. 2018) ("Federal courts sitting in diversity or exercising supplemental jurisdiction apply state substantive law and federal procedural law.").  Section 52-190a, the Second Circuit explained, erects a "heightened pleading requirement" in conflict with the Federal Rules of Civil Procedure.  See id. at 89. Accordingly, the requirements of Section 52-190a do not apply in federal court.  Rather, litigants must meet the pleading standards of the Federal Rules of Civil Procedure. Namely, they must plead "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (2009).

The court notes that the Second Circuit's holding that section 52-190a is procedural rather than substantive arose in the context of a Federal Tort Claims Act

(FTCA) case. See Corley, 11 F.4th 79 at 79. However, the Second Circuit did not limit its holding regarding the procedural nature of 52-190a to FTCA claims. Ultimately, the Second Circuit's holding rested on that Court's determinations that the "heightened pleading requirement in § 52-190a" conflicted with the Federal Rules of Civil Procedure, and that "nothing in § 52-190a effects any change in the substantive liability rules applied by Connecticut courts to determine whether a private party, such as a medical professional . . . , is responsible in damages to a plaintiff who alleges that he or she received negligent care." Id. at 89.

This reasoning is no less applicable in cases that arise outside of the FTCA context, where federal courts exercising diversity or supplemental jurisdiction must distinguish between substantive and procedural law, applying only federal procedural rules. See, e.g., id. at 88 (citing favorably to Gallivan v. United States, 943 F.3d 291, 296 (6th Cir. 2019), a diversity case in which the Sixth Circuit determined that requiring a plaintiff to file an affidavit of merit with a medical negligence complaint posed a heightened pleading standard in contravention of the Federal Rules of Civil Procedure). Thus, in the instant case, wherein the court exercises supplemental jurisdiction over the state law claims, the pleadings must adhere to the requirements set forth in the Federal Rules of Civil Procedure.

The Apportionment Complaint satisfies the federal pleading requirements, plausibly alleging that the Ambulance Defendants' failure to check, treat, and screen Lenetis was a substantial cause of Lenetis' injuries and death.  The defendants allege that Zetterstrom and Vest neglected to check Lenetis' neurological status or take him to the emergency department upon arrival to the hospital, even though he lost

consciousness during the ambulance trip.  Apportionment Compl. at ¶¶ 22-24, 28.

Meanwhile, the Ambulance Service, the defendants allege, failed to properly train,

supervise, or monitor its EMT employees, leading to their failures.  Apportionment

Compl. at ¶¶ 31-32.  Drawing all inferences in favor of the defendants, as the court must

at this stage, these facts are sufficient to plausibly allege that the Ambulance

Defendants' acts—failing to properly diagnose and treat a critically injured patient—

were a substantial factor contributing to Lenetis' injuries or death.  See, e.g., Carlson,

2008 WL 283259, at *2 ("Magic words such as substantial factor and proximate cause

need not be used and it is the substance of testimony which is utilized to determine if

the applicable evidentiary standard has been satisfied.") (collecting cases).  Because

the Apportionment Complaint's allegations leave "room for a reasonable disagreement"

as to the question of proximate cause, see Levesque, 286 Conn. at 249, a jury must

resolve the issue.

Thus, because the defendants have adequately alleged causation in the

Apportionment Complaint, the court denies the Ambulance Defendants' Motion to Strike

on the ground of a lack of causation.

C.    Saint Francis' Motion to Dismiss or Strike Third Count of the
        Apportionment Complaint (Doc. No. 58)

Saint Francis moves to dismiss the Third Count of the Apportionment Complaint

for a lack of personal jurisdiction or to strike the Third Count because its claims are

insufficient as a matter of law.  See Saint Francis' Mot. at 1.

1.    Motion to Dismiss for Personal Jurisdiction

Saint Francis argues that this court lacks personal jurisdiction over it because the

apportionment plaintiffs failed to comply with section 52-190a of the Connecticut

General Statutes; the medical opinion  letters attached to the Apportionment Complaint were not authored by "similar healthcare providers" as required by the statute.  <u>See</u> Saint Francis' Mem. at 6-8.

As the court has already discussed, <u>see</u> pp. 17-19, <u>supra</u>, the Second Circuit has held that "§ 52-190a is a procedural rule", inapplicable in federal court.  <u>Corley</u>, 11 F.4th at 82.  While, as Saint Francis points out, "a district court's personal jurisdiction is determined by the law of the state in which the court is located", <u>Licci v. Lebanese Canadian Bank, SAL</u>, 673 F.3d 50, 59 (2d Cir. 2012), the Second Circuit construes section 52-190a not as a jurisdictional rule, but as a "heightened pleading requirement" inconsistent with the Federal Rules of Civil Procedure.  <u>See</u> <u>id.</u> at 89.

Accordingly, any failure of Beeman, Clayton, and the Town of East Hartford to comply with the procedural formalities of section 52-190a will not limit this court's exercise of personal jurisdiction over Saint Francis, a Connecticut hospital.  <u>See</u> <u>id.</u> (vacating a district court decision that dismissed a Federal Tort Claims Act complaint for failure to affix a good-faith certificate pursuant to section 52-190a).

Because section 52-190a does not bar this court's exercise of personal jurisdiction over Saint Francis, the court denies Saint Francis' Motion to Dismiss on the ground of a lack of personal jurisdiction.

### 2. Insufficiency as a Matter of Law

Like the Ambulance Defendants, Saint Francis asserts that Count Three is legally insufficient because the original tortfeasor doctrine bars apportionment of the defendants' claims and the Apportionment Complaint does not adequately allege causation.  By the same reasoning applicable to the Ambulance Defendants, <u>see</u> pp.

13-20, supra, the original tortfeasor doctrine does not foreclose apportionment, and Saint Francis' contention that the Apportionment Complaint is insufficient as a matter of law falls short.

On the issue of causation, the Apportionment Complaint alleges that Saint Francis' employees failed to screen Lenetis through the emergency department or diagnose his condition, neglecting to notice that Lenetis was unresponsive for over an hour after he was admitted to the psychiatric unit.  Apportionment Compl. at ¶¶ 41-44. Drawing all inferences in favor of the defendants, these facts are sufficient to plausibly allege that the acts of Saint Francis and its employees in failing to diagnose and treat Lentis were a substantial factor contributing to his injuries or death.

The court therefore denies Saint Francis' Motion to Strike on the grounds of the original tortfeasor doctrine and causation.

D.   <u>Plaintiff's Motion to Strike or Sever the Apportionment Complaint (Doc. No. 46)</u>

1.   Motion to Strike

The plaintiff moves to strike the Apportionment Complaint, arguing, like the Apportionment Defendants, that the pleading is insufficient as a matter of law.  Because the court has already determined that the Apportionment Complaint is sufficient with respect to its claims against each of the Apportionment Defendants, <u>see</u> pp. 13-22, supra, the plaintiff's Motion to Strike is denied.

2.   Motion to Sever

The plaintiff argues, in the alternative, that the court should sever the apportionment claims under Rule 14(a)(4), which authorizes a party to move for

severance of a third-party claim.  <u>See</u> Pl.'s Mot. at 15-16.  The defendants and Saint
Francis oppose severance.

Rule 42(b) of the Federal Rules of Civil Procedure governs the bifurcation of
claims, allowing the court to "order a separate trial of one or more separate issues,
claims . . . or third-party claims" "for convenience, to avoid prejudice, or to expedite and
economize[.]"  While courts have discretion to determine whether to bifurcate under
Rule 42(b), several factors guide a court's analysis, including: (1) whether the pertinent
issues are significantly different from one another; (2) whether the issues are to be tried
before a jury or to the court; (3) whether the posture of discovery on the issues favors a
single trial or bifurcation; (4) whether the evidentiary issues overlap; and (5) whether the
party opposing bifurcation will be prejudiced if it is granted. <u>See, e.g.</u>, <u>Strychasz v.
Maron Const. Co., Inc.</u>, No. Civ. 3:01CV2063(PCD), 2002 WL 32500874, at *4 (D.Conn.
July 16, 2002); <u>Guidi</u>, 2003 WL 1846864, at *1.  Generally, however, courts grant
motions to bifurcate "only in exceptional circumstances." <u>See</u> <u>43.47 Acres of Land</u>, 45
F.Supp.2d at 190.

At this juncture, the record does not show that "exceptional circumstances"
warranting bifurcation exist.  The issues in each Count of the Complaint and the
Apportionment Complaint are interrelated, stemming from Lenetis' injuries over the
course of several hours on November 1, 2019.  Thus, discovery as to the events of that
day leading to Lenetis' death will require overlapping evidence and testimony.  Based
on the interconnected nature of the claims, it would be inefficient to stay proceedings on
the Apportionment Complaint pending the outcome of the original action.  The issues in
this matter may be resolved in one proceeding without substantially prejudicing any

party.  Bifurcation, on the other hand, could prejudice the Apportionment Defendants by requiring them to relitigate issues that may have been previously decided by a jury that would not have the benefit of hearing their defenses.

Thus, the court denies the plaintiff's Motion to Sever, but does so without prejudice to a renewal of the motion if a more developed record reveals evidence that the claims warrant severance.

## V.     CONCLUSION

For the reasons stated above, the court denies the plaintiff's Motion to Strike or Sever (Doc. No. 46), the Ambulance Defendants' Motion to Strike (Doc. No. 47), and Saint Francis' Motion to Dismiss and/or Motion to Strike (Doc. No. 58).

**SO ORDERED.**

Dated at New Haven, Connecticut this 23rd day of November 2021.


/s/ Janet C. Hall
Janet C. Hall
United States District Judge