UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

```
WILLIAM WYNNE, ADMINISTRATOR    :
OF THE ESTATE OF ANDREW         :
LENETIS,                        :
                                :
   plaintiff,                   :
                                :
v.                              :   CASE NO. 3:21cv1834(JCH)
                                :
TOWN OF EAST HARTFORD, KEVIN    :
BEEMAN, and KWANZA CLAYTON      :
                                :
   defendants.                  :
```

RULING ON PENDING DISCOVERY MOTIONS

Currently pending before the Court are plaintiff's motion for permission to serve excess interrogatories (dkt. #122) and plaintiff's motion to determine the sufficiency of defendant's answers and objections to request for admission (dkt. #125).[1] Based on the reasons articulated herein, the motions are granted in part and denied in part.

A. Background

This case relates to the unfortunate passing of plaintiff-decedent Andrew Lenetis. On November 1, 2019, a call to 911 from a mental health worker indicated that Mr. Lenetis was in crisis and in need of assistance. (dkt. #122 at 2.) Two officers from the East Hartford Police Department, defendants Beeman and

---

[1] Plaintiff's Motion to Compel (dkt. #127) is also pending before this Court. A separate ruling will be issued to address that motion.

1

Clayton, responded to the call. Following the interaction with the officers, Mr. Lenetis was transported to the hospital and later died. Plaintiff brought this action alleging, among other things, that the use of force was inappropriate and that the officers failed to accommodate Mr. Lenetis' disability during their interaction.

    B. <u>Legal Standard</u>

Rule 26(b)(1) of the Federal Rules of Civil Procedure provides that

> [p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

"Discovery under the Federal Rules of Civil Procedure is a conditional and carefully circumscribed process." <u>Bagley v. Yale Univ.</u>, 315 F.R.D. 131, 144 (D. Conn. 2016), <u>as amended</u> (June 15, 2016). The party seeking the discovery has the burden of demonstrating relevance. <u>Id.</u> This analysis "requires one to ask: Is the discovery *relevant* to a party's *claim* or *defense*? Which claim? Which defense? At this stage of the litigation, one looks to the parties' pleadings for their claims or defenses." <u>Id.</u> Once the requesting party has demonstrated relevance,

2

"[t]he party resisting discovery bears the burden of showing why discovery should be denied." Cole v. Towers Perrin Forster & Crosby, 256 F.R.D. 79, 80 (D. Conn. 2009).

"All '[m]otions relative to discovery,' including motions to compel, 'are addressed to the discretion of the [district] court.'" Id. (quoting Soobzokov v. CBS, Quadrangle/New York Times Book Co., 642 F.2d 28, 30 (2d Cir. 1981)).  "Rule 26 vests the trial judge with broad discretion to tailor discovery narrowly and to dictate the sequence of discovery." Crawford-El v. Britton, 523 U.S. 574, 598 (1998).  Discovery orders "will only be reversed if [the district court's] decision constitutes an abuse of discretion." Daval Steel Prods. v. M/V Fakredine, 951 F.2d 1357, 1365 (2d Cir. 1991).

    C. Plaintiff's Motion for Permission to Serve Excess Interrogatories

In this motion (dkt. #122), plaintiff asserts that the defendants' responses to certain requests for admission "are both internally contradictory and at odds with the facts established through discovery." (dkt. #122 at 1.)  As a result, the plaintiff asserts a need to serve additional interrogatories and is seeking permission to exceed the 25-interrogatory limit.

The issue plaintiff allegedly needs to explore through the additional interrogatories relates to the East Hartford Police

Department's (hereinafter "EHPD") General Order 185.00[2] and whether and when it was reviewed by the defendant officers. General Order 185.00 provides officers with guidance in dealing with persons with mental health disabilities. (Dkt. #122 at 2 and dkt. #123 at 1.)  Plaintiff asserts that whether the defendants complied with EHPD General Order 185.00 is a key issue for trial and plaintiff is probing whether and when the defendant officers reviewed the policy. (Dkt. 122 at 3-4.)

Plaintiff argues that the defendant officers and EHPD Chief Davis effectively testified that every policy and policy change is supposed to be reviewed by all officers. (Dkt. 122 at 3.) However, the defendant officers could not recall having read the policies at issue.  Plaintiff further asserts that the records produced by the defendant Police Department, known as PowerDMS, purport to show when officers reviewed General Orders and indicate that the defendant officers did not review the policies at issue.  (Dkt. #122 at 3-4.) According to plaintiff, however, this fact is contradicted by multiple responses that the defendants provided to requests for admission that plaintiff served regarding General Order 185.00.  More specifically, some of the requests for admission asked the defendants to admit that the defendant officers did not review General Order 185.00

---

[2] The discovery also related in part to General Order 260.

(effective March 24, 2019) prior to certain dates, but the defendants denied those requests for admission (meaning the defendants asserted that the officers had reviewed the policy).

Defendants explain the alleged inconsistency by averring that defense counsel made an error in stating that the defendant officers had reviewed General Order 185.00 on the PowerDMS system. Rather, defendants assert that prior to March 2019, each officer reviewed an earlier iteration of General Order 185.00 as they were required to do. However, in March of 2019, a grammatical or administrative change was made to General Order 185.00 and defense counsel asserts that the EHPD's policy does not require all officers to review and sign off on policy changes that are not substantive. During oral argument, defense counsel indicated that the defendant officers had reviewed the policy in connection with their hiring, while going through the police academy, or during field training. Defendants also assert that documents they produced during discovery specifically indicate when each officer reviewed General Order 185.00.

In response, plaintiff notes that the requests for admission specifically asked about the revision that was made to General Order 185.00 in March of 2019. The response to those requests denied that the officers did **not** review that version of the policy. Plaintiff noted that during the oral argument, defense counsel seemed to indicate that the defendants are now

admitting that the defendant officers never reviewed the amended policy (i.e., counsel admits that the last time the officers reviewed General Order 185.00 was <u>before</u> March of 2019).  Plaintiff argues that although defense counsel provided a lengthy explanation during oral argument as to why the officers did not review the amended policy (i.e., the March 2019 revision was merely an administrative revision), the defendants had never before articulated such an explanation.[3]  Thus, plaintiff argues that he needs to be able to serve follow-up interrogatories asking about whether there are any policies defining what constitutes an administrative revision and whether any of those policies state whether or when such revisions need to be reviewed by officers.

Based on the representations from counsel during the oral argument, it is clear that except for some grammatical changes, the March 2019 version of General Order 185.00 is essentially identical to the version that existed prior to March of 2019. According to the defendants, the officers did, in fact, review the prior version. Therefore, defendants' answer to the request for admission may technically be correct. However, to the extent that plaintiff's request for admission specifically asked whether the officers reviewed the policy that was effective on

---

[3] The Court notes that in responding to Request for Admission number 4, the defendant stated that "[t]he defendant officers were not assigned to review this particular administrative revision to General Order 185.00."

March 24, 2019, it appears the defendant-officers did not review that specific version of the policy[4]. Therefore, assuming it is the case, the defendants should amend their responses to the requests for admission to reflect that the officers did not review General Order 185.00 after the "administrative revision" was made in March of 2019.

Regarding the need to the serve any additional interrogatories, the plaintiff already has the March 2019 version of General Order 185.00 and the pre-March 2019 version. No argument was made that there is any substantive difference in the two versions. Given the documents that defendants have produced, the plaintiff can determine when each officer last reviewed General Order 185.00 in relation to the revisions.

---

[4] The Court understands defendants' argument that the responses, as drafted, are correct. Request for Admission number 3 asked the defendants to admit that "General Order 185.00 (effective March 24, 2019) is an order adopted by the [EHPD] on March 24, 2019 to establish policy and procedures for responding to persons in crisis suffering from mental illness." (Dkt. 122-9 at ¶ 3.) Defendants denied this request and noted that "General Order 185.00 was first adopted and became effective on January 14, 2003." (Id.) To the extent that defendants assert that the defendant officers reviewed General Order 185.00 prior to the encounter with Mr. Lenetis and some of the requests for admission could be interpreted to suggest that an admission means the officers never reviewed any version of General Order 185.00, the Court understands defendants' concern. For example, Request for Admission number 8 states that defendant Kevin Beeman did not review General Order 185.00 (effective March 24, 2019) <u>at any time prior to November 1, 2019.</u> Defendant's position is that General Order 185.00 became effective in January of 2003 and Officer Beeman reviewed it prior to November 1, 2019, so it was accurate to deny that Officer Beeman did not read General Order 185.00 prior to November 1, 2019. However, the parenthetical in the requests for admission can be construed as suggesting that the plaintiff was referring to the version of General Order 185.00 that became effective in March of 2019, as opposed to incorrectly asserting that General Order 185.00 did not become effective until March of 2019. Given this clarification, the responses to the disputed requests for admission do not seem accurate, but the Court understands defense counsel's explanation.

While the Court understands and appreciates defendants' explanation regarding the administrative revision and the fact that it appears that no substantive change was made to the policy in March of 2019, there does not appear to be anything in the record (at least the record before the court) that explains what constitutes an "administrative revision." Therefore, the plaintiff should be able to serve interrogatories related to (1) whether there is a policy or document defining what constitutes an administrate revision and (2) if so, whether there is a policy or document explaining whether and to what extent such an administrative revision must be reviewed by officers who already reviewed the policy prior to the administrative revision.  The parties will have ample opportunity to argue over what Chief Davis meant when he testified that officers are required to sign off on all "policy changes."  Presumably, based on the oral argument, the defendants will argue that a "policy change" means an actual change to the substance of the policy, as opposed to grammatical changes that do not alter the policy at an operational level.  Plaintiff will argue to the contrary.  The Court cannot resolve this factual disagreement in the context of a discovery dispute. Therefore, the plaintiff will be allowed to inquire about the two issues discussed above.

Given the explanation that the defendants offered during oral argument, if there is a document or policy that defines an

8

administrative revision, plaintiff should be allowed to request a copy of it in order to test the veracity of the EHPD's position. Similarly, if there is a policy that addresses whether administrative revisions need to be reviewed by officers who have already reviewed the unrevised policy, plaintiff should be allowed to inquire about the policy and request a copy of it.

Therefore, plaintiff's motion to serve additional interrogatories is granted, in part, and denied, in part. As articulated above, defense counsel shall amend the responses to plaintiff's requests for admission to comport with the representations made during the oral argument. In addition, plaintiff shall be permitted to serve some of the additional interrogatories set forth in Exhibit J to plaintiff's motion. More specifically, interrogatory numbers 4, 5, 6, and 18. Also, plaintiff will be allowed to serve narrowly tailored requests for production related to those interrogatories. These additional interrogatories are limited in scope to the matters addressed in this ruling.

The Court notes that defendant argued during oral argument that answering additional discovery on this issue would be unduly burdensome. The Court does not agree. As an initial matter, the Court has significantly reduced the number of interrogatories that plaintiff will be allowed to serve. Furthermore, during the oral argument, defendant was able to

articulate the issues surrounding the revision of policies and whether officers are supposedly required to review such revisions. Therefore, defendant would not be burdened by formally responding to interrogatories on this subject. Furthermore, if such a policy exists in writing, it should be readily available to defendant.

    D. <u>Plaintiff's Motion to Determine the Sufficiency of Defendants' Responses to Requests for Admission</u>

Plaintiff filed a motion seeking to determine if the defendants' responses and objections to plaintiff's requests for admission are sufficient. (Dkt. #125.) Specifically, plaintiff asks the court to overrule defendants' objections to Requests for Admission numbers 26, 27, 29, 30, and 31 and order the defendant to provide amended responses to Request for Admission numbers 3, 26, 27, 29, 30, 31, and 32.

Plaintiff's motion asserts that the "primary claim in the case is that [Mr. Lenetis] was a person with a disability who was entitled to reasonable accommodations during the welfare check" done by the defendants. (Dkt. #125 at 3.) Plaintiff argues that failure to provide the accommodations is a violation of the ADA. To that end a number of requests for admission were served seeking admissions regarding Mr. Lenetis' mental health condition. Defendant, in response, objected to a number of

these requests and denied having sufficient knowledge to admit or deny others.

As properly articulated by plaintiff, Rule 36 of the Federal Rules of Civil Procedure allows for requests for admission to narrow or reduce the issues at trial. Further, requests for admission can be related to "facts, the application of law to fact, or opinions about either." Fed. R. Civ. P. 36(a)(1)(A). Under Fed. R. Civ. P. 36(a)(5), a party is not permitted to object solely on the ground that the request presents a genuine issue for trial. Additionally, Rule 36 clearly contemplates that a party may assert that it is without sufficient information or knowledge to admit or deny a request for admission. However, that can only be done after a party affirms that it has "made reasonable inquiry and that the information it knows or can readily obtain is insufficient to enable it to admit or deny." Fed. R. Civ. P. 36(a)(4).

In this case, upon review of the requests and the defendant's responses, the Court grants plaintiff's motion to overrule the objections to Requests for Admission numbers 26, 27, 29, 30, 31, and 32. Notably, the objections served by defendants primarily articulate that the requests call for improper medical or legal conclusions. Both parties made arguments related to whether the requests in this case sought legal conclusions or opinions, or in the alternative the

11

application of law to fact. "As a strictly legal proposition, the Defendants are of course right that pure requests for opinions of law, such as legal conclusions ... are not contemplated by [] rule [36]." Shea v. Sieunarine, No. 3:21-CV-00673 (JCH), 2022 WL 2305554, at *2 (D. Conn. June 27, 2022)(quotation omitted). "'The distinction between a request that permissibly seeks the admission of an issue requiring the application of the law to the facts of a case and a request that impermissibly seeks the admission of a pure issue of law is not easy to draw.'" Id. at 3. (quoting U.S. ex rel. Bibby v. Mortg. Inv'rs Corp., 323 F.R.D. 424, 428 (N.D. Ga. 2017)).

In matters such as this "[a]lthough it is 'not always easy' to determine whether a party has drafted or responded to an RFA appropriately, '[t]he Court is invested with substantial discretion under Rule 36 to resolve such questions and control discovery accordingly.'" Jacobson Warehouse Co., Inc. v. Prestige Brands, Inc., No. 20CV4416CSAEK, 2022 WL 1617711, at *7 (S.D.N.Y. May 23, 2022)(quoting U.S. Bank Nat'l Ass'n v. Triaxx Asset Mgmt. LLC, 2020 WL 9549505, at *3(S.D.N.Y. Nov. 30, 2020)). Upon review, the Court has determined that the requests for admission at issue call for the application of law to facts and not pure conclusions of law. Of course, defendant is always able to deny any portion of the requests for admission at issue.

Further, given the amount of information that has been exchanged in this case, it is unclear to the Court that the defendant has done a sufficient inquiry to claim a lack of knowledge or information to respond to the requests for admission by admitting or denying them.  Between the medical records and the reports of the officers involved in the incident, the Court believes that defendant has sufficient information to admit or deny the requests for admission. Defendant is permitted to deny any of the requests, but the Court concludes it must respond to the disputed requests for admission. Therefore, plaintiff's motion is granted.  Defendant is ordered to submit amended responses to Requests for Admission numbers 3, 26, 27, 29, 30, 31, and 32.[5]

## CONCLUSION

For the above reasons, the plaintiff's motions are GRANTED, in part.  The Court has concluded that the information sought is relevant, proportional to the needs of the case, and not overly burdensome.

This is not a Recommended Ruling.  This is a discovery ruling or order which is reviewable pursuant to the "clearly erroneous" statutory standard of review.  28 U.S.C. §

---

[5] The Court notes that the parties argued over the clarity of defendant's responses to Requests for Admission numbers 3, 31, and 32.  At oral argument, the Court inquired about those responses and found the answers to be confusing.  As such, requests 3, 31, and 32 are to be amended to comport with the discussion at oral argument and to provide more clarity.

13

636(b)(1)(A); Fed. R. Civ. P. 72(a); and D. Conn. L. R. 72.2. As such, it is an order of the Court unless reversed or modified by a district judge upon motion timely made.

SO ORDERED this 29th day of December, 2022 at Hartford, Connecticut.

_____/s/_____

Robert A. Richardson
United States Magistrate Judge